IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SAFECO INSURANCE COMPANY          §
OF INDIANA,                        §
                                   §
            Plaintiff-counterdefendant,  §
                                   §  Civil Action No. 3:10-CV-1289-D
VS.                                §
                                   §
MARCUS HILES,                      §
                                   §
            Defendant-counterplaintiff.  §

MEMORANDUM OPINION
AND ORDER

In this litigation involving insurance coverage questions under a homeowners policy
and related extra-contractual claims, the court holds that the insurer did not have a duty to
defend or indemnify the insured for lawsuits that alleged business-related claims, in which
the insured was not a defendant, or that the insured did not tender to the insurer. The court
also concludes that the insured cannot recover based on theories of waiver and estoppel or
based on extra-contractual claims. Accordingly, the court grants the insurer's motion for
summary judgment, denies the insured's motion for summary judgment, and enters judgment
in favor of the insurer.

I

Plaintiff-counterdefendant Safeco Insurance Company of Indiana ("Safeco") insured
defendant-counterplaintiff Marcus Hiles ("Hiles") under a homeowners insurance policy
("the Policy") for three consecutive one-year periods, beginning August 25, 2007 and ending

August 25, 2010.[1]  The Policy provided Hiles $500,000 in personal liability coverage per

occurrence.  In August 2009 Hiles tendered to Safeco two lawsuits pending in Dallas County,

Texas, and requested that Safeco defend and indemnify him under the terms of the Policy.

These lawsuits were *Anderton v. Cawley*, No. 08-05426-K (192nd Dist. Ct., Dallas County,

Tex.) ("*Anderton*"), and *Cascade Properties, Ltd. v. Western Rim Investors 2006-4, L.P.*, No.

08-06533-E (101st Dist. Ct., Dallas County, Tex.) ("*Cascade*").  In support of his request,

Hiles attached the third amended petition and third supplemental petition in *Anderton*, and

the first amended petition in *Cascade*.  Hiles asserts in his answer in the instant litigation that

he tendered two additional lawsuits to Safeco: *Western Rim Investors 2006-3, L.P. v.*

*Cascade Properties, Ltd.*, No. 08-1328-B (114th Dist. Ct., Smith County, Tex.), and *J&S*

*Drywall & Supply Co. v. Mansions Custom Homes, III, L.P.*, No. 09-1895-C (241st Dist. Ct.,

Smith County, Tex.) (collectively, "the additional lawsuits").  Safeco maintains that Hiles

---

[1]Both sides have moved for summary judgment.  As the court has stated in cases like *AMX Corp. v. Pilote Films*,

> [b]ecause both parties have filed motions for summary judgment, the court will principally recount only the evidence that is undisputed. If it is necessary to set out evidence that is contested, the court will do so favorably to the party who is the summary judgment nonmovant in the context of that evidence. In this way it will comply with the standard that governs resolution of summary judgment motions.

*AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5) (Fitzwater, J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)), *modified in part on other grounds*, 2007 WL 2254943 (N.D. Tex. Aug. 7, 2007) (Fitzwater, J.).

never tendered the additional lawsuits.

Hiles is a named defendant in *Anderton*.  Lew Anderton ("Anderton") sued Hiles and several others, alleging, *inter alia*, numerous business-related claims.  Safeco characterizes *Anderton* as arising out of a dispute between business partners relating to the development of a residential community in Tyler, Texas.  The third amended petition was the live pleading at the time Hiles tendered *Anderton* to Safeco.  In that petition, Anderton asserts four causes of action against Hiles: tortious interference with existing contracts, aiding and abetting breach of fiduciary duty, defamation, and conspiracy.

Hiles also tendered *Cascade* to Safeco in August 2009.  Hiles is not a named defendant in *Cascade.*  Safeco maintains that the *Cascade* defendants are business entities owned or controlled by Hiles.  In *Cascade* plaintiff Cascade Properties, Ltd. ("Cascade") sued Western Rim Investors 2006-4, L.P., Western Rim Investors 2007-1, L.P., Cascades of Tyler Joint Venture, LLP, and Cascades of Tyler Homes Joint Venture, LLP (collectively, "Hiles Entities") alleging various business-related causes of action.  According to Safeco, the controversy in *Cascade* arose out of two agreements that the Hiles Entities allegedly entered into with Cascade.  The agreements allegedly granted Cascade sole and exclusive management authority for all sales activities related to the residential development at issue in *Anderton.*

*Anderton* and *Cascade* were consolidated (the "consolidated case") five days after

Hiles tendered them to Safeco for defense and indemnification.[2]  Shortly thereafter, the plaintiffs in the consolidated case filed a fourth amended petition in which they asserted only a defamation claim against Hiles.  Later that month, the plaintiffs filed a fifth amended petition, in which they asserted only a defamation claim against Hiles.  In February 2010 the plaintiffs filed a sixth amended petition in which they asserted claims against Hiles for aiding and abetting breach of fiduciary duty, civil conspiracy, tortious interference, bad faith pleading, and defamation.  In March 2010 the plaintiffs filed a seventh amended petition in which they asserted against Hiles claims for aiding and abetting breach of fiduciary duty and defamation.  In 2010 Anderton nonsuited, i.e., voluntarily dismissed, the defamation claim against Hiles.

Hiles maintains that he, individually and on behalf of his companies, entered into a confidential settlement agreement and release with another defendant, William Cawley ("Cawley"), pursuant to which Hiles is obligated to transfer $1.75 million in money and property rights to Cawley.  Hiles also avers that he spent approximately $2 million in attorney's fees and expert witnesses in the lawsuits.

After Hiles tendered *Anderton* and *Cascade* to Safeco on August 7, 2009, Safeco sent Hiles's attorney a letter dated September 30, 2009 informing Hiles that Safeco was investigating his claim subject to a reservation of rights.  Safeco informed Hiles in the letter that "the only party in [*Anderton*] who meets the definition of an insured is Marcus Hiles."

---

[2]In his answer, Hiles avers that *Anderton* and *Cascade* were consolidated in July 2009. This difference is immaterial.

P. App. 170.  Safeco stated that it "question[ed] whether the insuring agreement is triggered, as the allegations indicate intentional acts rather than an accident as required by the definition of 'occurrence.'"  *Id.* at 171.  And Safeco noted that the Policy might exclude coverage because the acts complained of arose out of Hiles's business pursuits.  Safeco also stated that "any action taken by [Safeco] or its representative does not constitute an admission of coverage and shall not waive any of [its] rights under [the Policy]."  *Id.* at 172.

Safeco sent Hiles's attorney a letter dated November 25, 2009 in which it informed him that (1) Hiles was the only entity who met the definition of an insured under the Policy; (2) the Policy did not provide coverage for allegations of intentional conduct (i.e., the claims of tortious interference with existing contract, aiding and abetting breach of fiduciary duty, and conspiracy); and (3) the allegation of defamation was ambiguous because it did "not specify if the defamatory remarks were made in a business or personal capacity."  *Id.* at 174.  Safeco informed Hiles that it would defend him against the allegation of defamation in the consolidated case under a full reservation of rights, and that it would continue to investigate whether coverage applied to the acts alleged in the consolidated case.  Safeco tendered the conditional defense of Hiles to Kelly Crain, Esq. ("Crain") for defense against the allegations made against Hiles in a personal or non-business capacity.

Because Safeco accepted Hiles's conditional defense subject to a reservation of rights, Hiles rejected Crain and chose to continue to be represented by the law firm of Coats Rose. Safeco, through its law firm, issued a supplemental reservation of rights letter dated February 17, 2010 in which it informed Hiles that (1) only Hiles qualified as an insured under the

Policy; (2) certain exclusions might preclude or limit Hiles's coverage under the Policy (i.e., the business pursuits exclusion or the definition of occurrence); and (3) the Policy was excess coverage over other insurance.  Safeco also disagreed with Hiles's assertion of a conflict of interest that permitted him to obtain independent counsel, but it nevertheless agreed to pay Coats Rose's reasonable and necessary fees.  Safeco also asked that Coats Rose segregate the fees incurred in defending Hiles from the those incurred defending the Hiles businesses or other defendants.

According to Safeco, Coats Rose submitted invoices of more than $1.87 million in fees and costs in defending Hiles and the Hiles Entities in the consolidated case.  But Coats Rose did not segregate the work performed in defending Hiles against the *Anderton* claims from the work done in defending the Hiles Entities against the *Cascade* claims.  Safeco reimbursed Coats Rose for the individual billing entries that appeared to potentially relate to Coats Rose's defense of Hiles against the *Anderton* claims.

In the instant case, Safeco seeks a judgment declaring that it has no duty under the Policy to defend or indemnify Hiles and/or the Hiles Entities for the claims asserted in the consolidated case, and, alternatively, that its only obligation to defend is limited to the reasonable and necessary fees incurred by Coats Rose in defending Hiles against the *Anderton* claims asserted in the consolidated case.  Safeco maintains that it has no duty to indemnify Hiles because he paid nothing to resolve the defamation claim in *Anderton*.

Hiles asserts counterclaims for (1) breach of the Policy; (2) unfair settlement practices, in violation of Tex. Ins. Code Ann. § 541.000, *et seq.* (West 2003 & Supp. 2010); (3) bad

faith in connection with Safeco's handling of the third-party claims against Hiles; (4) violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2011); and (5) failure to timely accept, deny, or pay Hiles's claims, in violation of Tex. Ins. Code Ann. § 542.051, *et seq.* Hiles also seeks a declaratory judgment that (1) Safeco has a duty and contractual obligation to pay the reasonable and necessary costs to defend Hiles in the consolidated case and the additional lawsuits; (2) Safeco breached its duties to Hiles; (3) Hiles was damaged by the breach; (4) Hiles's damages were proximately caused by Safeco's breach; (5) the Policy provides coverage to Hiles with respect to the consolidated case and the additional lawsuits; and (6) Hiles's rights and damages incurred vis-a-vis the Policy. Hiles also asserts a counterclaim for attorney's fees incurred in the instant litigation.[3]

Safeco moves for summary judgment on its declaratory judgment action and on Hiles's counterclaims. Hiles moves for summary judgment on his breach of contract counterclaim.

## II

The parties' summary judgment burdens depend on whether they are moving for summary judgment on a claim or counterclaim for which they will have the burden of proof

---

[3]An award of attorney's fees is a remedy, not a substantive cause of action. *See, e.g., AMS Staff Leasing, N.A., Ltd. v. Associated Contract Truckmen, Inc.*, 2005 WL 3148284, at *1 (N.D. Tex. Nov. 21, 2005) (Fitzwater, J.) (citing *United States v. Smelser*, 87 F.2d 799, 800-01 (5th Cir. 1937)). The court therefore need not separately address Hiles's counterclaim for attorney's fees.

at trial.  Hiles moves for summary judgment on his breach of contract counterclaim, a claim

for which he will bear the burden of proof at trial.[4]  To be entitled to summary judgment, he

"must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank*

*One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995)

(Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  "The

court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co.*

*v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas.*

*Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007)

(Fitzwater, J.)).  Safeco must meet the same burden when moving for summary judgment

based on a policy exclusion.

Where Safeco is moving for summary judgment on counterclaims for which it will not

---

[4]Ordinarily, a plaintiff filing a declaratory judgment action bears the burden of proof at trial.  Where a plaintiff is seeking a declaration of nonliability rather than affirmative relief, however, the burden is on the party seeking affirmative relief.  *See Berthelot v. Brinkmann*, 322 S.W.3d 365, 369 (Tex. App. 2010, pet. denied) ("Generally, the burden of proof in a declaratory judgment action is on the party who, on the pleadings, asserts the affirmative claim, . . . and is not controlled by the position of the parties on the docket as plaintiff or defendant[.]").  Safeco seeks a declaration of *nonliability*—that it has no duty to defend or indemnify Hiles.  And although Safeco would normally have the burden of proof at trial of establishing its right to a declaratory judgment, in Texas, an insured generally bears the initial burden of showing that a risk comes within the policy's coverage.  Moreover, in this case, Hiles relies on theories of waiver and estoppel, for which he will have the burden of proof at trial, to establish that Safeco has the duty to defend and indemnify.  *See, e.g., Canal Indem. Co. v. Palmview Fast Freight Transp., Inc.*, 750 F.Supp.2d 743, 747-48 (N.D. Tex. 2010) (Fitzwater, C.J.).  Because a resolution of Hiles's motion for summary judgment on his breach of contract counterclaim will also resolve the questions underlying Safeco's declaratory judgment action, the court focuses on Hiles's burden to establish that he is entitled to summary judgment.

bear the burden of proof at trial, it is only obligated to point to the absence of evidence of one essential element of the counterclaim in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once Safeco does so, Hiles must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Hiles's favor on the claim in question. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Hiles's failure to produce proof as to any essential element of a counterclaim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if Hiles fails to meet this burden. *See Little*, 37 F.3d at 1076.

## III

The court will address together the parts of both parties' motions that relate to Hiles's counterclaim that Safeco breached the Policy by failing to defend and indemnify him against the defamation claim in *Anderton*.

## A

Under Texas law, to establish his breach of contract counterclaim Hiles must prove four elements: (1) the existence of a valid contract; (2) that Hiles performed his duties under the contract; (3) that Safeco breached the contract; and (4) that Hiles suffered damages as a result of the breach. *See, e.g., Lewis v. Bank of Am. NA,* 343 F.3d 540, 544-45 (5th Cir. 2003) (Texas law).

Safeco concedes that the Policy is a binding contract, but it disputes the allegation that it breached the Policy. Hiles argues that Safeco had a duty to defend him in the consolidated case because (1) Safeco agreed to pay his defense costs; (2) the third-party claims against him created a duty to defend under the terms of the Policy; and (3) no exclusion in the Policy barred coverage. Safeco responds that it did not have a duty to defend Hiles because (1) it had no duty to defend in *Cascade*; (2) the defamation claim in *Anderton* was excluded from coverage by the Policy; and (3) it did not waive its right to deny, and is not estopped from denying, that it had a duty to defend.[5]

As the insured, Hiles "has the burden of establishing coverage under the terms of the policy." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). "[T]he petition's allegations and the policy's language determine the insurer's duty to defend." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997); *see also Rhodes v. Chi. Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983) (Texas law) ("Under Texas law, the insurer's duty to defend is determined solely from the face of the pleadings and without reference to facts outside of the pleadings."). This is referred to as the "eight corners" rule. *See, e.g., Nat'l Union Fire Ins. Co. of Pitt. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). The eight corners rule is also followed in determining

---

[5]In its letters to Hiles and in its amended complaint, Safeco asserts that the defamation claim did not arise out of an "occurrence," as defined in the Policy, because an "occurrence" must be accidental and cannot be based on expected or intended conduct. Safeco does not rely on this argument as a basis for summary judgment in its favor, and the court need not address it.

whether an allegation falls within a policy exclusion. *Calderon v. Mid-Century Ins. Co. of Tex.*, 1998 WL 898471, at *2 (Tex. App. 1998, pet. denied) (not designated for publication). The court is to "compare the allegations in the petition filed against the insured with the coverage afforded by the insurance policy." *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., Inc.*, 252 S.W.3d 450, 454 (Tex. App. 2008, pet. denied). "When applying the eight corners rule, [the court] give[s] the allegations in the petition a liberal interpretation." *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141. If the facts alleged in the pleadings would give rise to any claim within the policy's coverage, the insurer is obligated to defend the suit against the insured. *Gen. Star*, 252 S.W.3d at 454 (citation omitted). But if the petition does not allege facts within the scope of coverage, the insurer is not obligated to defend the suit. *Id.* (citation omitted). Likewise, if the "petition only alleges facts excluded by the policy, the insurer is not required to defend." *Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982); *see also Holmes v. Emp'rs Cas. Co.*, 699 S.W.2d 339, 340-41 (Tex. App. 1985, writ ref'd n.r.e.) ("The insurer may rely on the allegations of the petition, and if the plaintiff alleges facts that, prima facie, exclude the plaintiff from the liability coverage, the insurer has no duty to defend.").

> Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor.

*Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141 (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).  "[T]his complaint-allegation rule gives rise to a duty to defend if one or more of the plaintiff's claims, if taken as true, are sufficient to state a cause of action coming within the terms of the policy."  *Rhodes*, 719 F.2d at 119 (internal quotation marks, citation, and ellipses omitted).  The court will not, however, "read facts into the petition, nor will [the court] look outside of the petition or imagine factual scenarios that might trigger coverage."  *Gen. Star*, 252 S.W.3d at 454-55 (citation omitted).  "The duty to defend does not depend upon what the facts actually are or on what the parties believe them to be but rather upon what the plaintiff alleges them to be."  *Hodges v. Allstate Ins. Co.*, 1996 WL 33650193, at *2 (Tex. App. 1996, no writ) (not designated for publication).  And "[i]f an insurer has a duty to defend its insured against any portion of the underlying suit, then the insurer is required to defend the entire suit."  *Gen. Star*, 252 S.W.3d at 455 (citation omitted).  The court must look to all of the pleadings in a case to determine whether the duty to defend was breached at any time after the claim was tendered.  *See, e.g., Rhodes*, 719 F.2d at 119.

## B

Hiles maintains that the defamation claim asserted against him in *Anderton* is covered. Under the Policy,

> [i]f a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:
>
> 1.  pay up to our limit of liability for the damages for which the

- 12 -

*insured* is legally liable; and

    2.  provide a defense at our expense by counsel of our choice
even if the allegations are groundless, false or fraudulent.

D. App. 69.[6] Hiles posits that the defamation cause of action asserted in *Anderton* is a claim for damages because of bodily injury.  The definition of "bodily injury" in the Policy is replaced by a different definition of "bodily injury" in an endorsement to the Policy (the "Endorsement").  The Endorsement defines "bodily injury" as, *inter alia*, "personal injury arising out of . . . libel, slander or defamation of character[.]"  D. App. 90.  Safeco does not appear to contest that the defamation claim against Hiles in *Anderton* alleges personal injury arising out of defamation of character.  Therefore, the court holds that Hiles has established beyond peradventure that the defamation claim against him in *Anderton* is covered by the Policy, unless excluded from coverage by a policy exclusion.

C

Safeco contends that it had no duty to defend or indemnify Hiles because a policy exclusion applies to the defamation claim against Hiles in *Anderton*.  "If the insured proves coverage, then to avoid liability the insurer must prove the loss is within an exclusion." *Gilbert Tex. Constr.*, 327 S.W.3d at 124.

In its letters to Hiles, Safeco noted several times that coverage might be barred by the "business pursuits" exclusion.  Under the Policy, "coverage does not include . . . injury arising out of the *business* pursuits of any *insured*."  P. App. 87; *see also id.* at 66-67

---

[6]The italicized words are defined terms under the Policy.

(providing that personal liability coverage does not apply to bodily injury "arising out of *business* pursuits of any *insured*"). "'Business' means trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or any other activity, including civic or public, engaged in for money or other compensation." *Id.* at 77.

"[I]n determining the applicability of an exclusion, [the court] must focus on the origin of the damages and not the legal theories asserted for recovery." *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 677 (Tex. App. 1993, writ denied) (citation omitted). The court applies the eight corners rule—looking only to the underlying petition and to the insurance policy—to determine whether an exclusion applies; the court does not look outside the petition or imagine factual scenarios that might trigger coverage. If the petitions in the consolidated cases only allege facts that are excluded from coverage, Safeco had no duty to defend or indemnify Hiles.

Texas follows a two-part inquiry when determining whether the business pursuits exclusion applies. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643-44 (Tex. 2005) (citing *United Servs. Auto. Ass'n v. Pennington*, 810 S.W.2d 777, 778-80 (Tex. App. 1991, writ denied)). The court looks at the "continuity or regularity of the activity" and "a profit motive, usually as a means of livelihood, gainful employment, earning a living, procuring subsistence or financial gain, a commercial transaction or engagement." *Id.* (internal quotation marks and citation omitted). The profit need not be realized. *Id.* Moreover, "as numerous courts have recognized, the purpose of the business pursuits exclusion is to lower homeowners insurance premiums by removing coverage for activities that are not typically

- 14 -

associated with the operation and maintenance of one's home." *Id.* at 645 (noting that commercial limestone mining is not an activity typically associated with owning and maintaining a home). And in determining whether bodily injury arises out of business pursuits, the court concept of "arise[s] out of means that there is simply a causal connection or relation[.]" *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (internal quotation marks and citation omitted). The court must read the petitions in question literally to see if the damages, if any, arise out of business pursuits. *See, e.g., Altivia Corp. v. Greenwich Ins. Co.*, 161 S.W.3d 52, 56 (Tex. App. 2004, no pet.) (concurring opinion) (opining that majority erroneously read facts into the pleadings by speculating about whether defamatory communications were considered business pursuits).

Several courts have held that the insurer had no duty to defend its insured where the plaintiff in the third-party action alleged damages arising from an insured's business pursuit. In *Adamo* the court held that the business pursuits exclusion applied to a cause of action that arose only because of an attorney-client relationship, and that the origin of the alleged damages stemmed from the professional relationship. *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d at 677.

In *Altivia Corp.* the court rejected the insured's argument that the underlying libel and slander allegations were within the policy's coverage, concluding that the insured did not show how the allegations could have given rise to any claim that would have been within policy coverage. *See Altivia Corp.*, 161 S.W.3d at 54.

In *Allstate Texas Lloyd v. Lantz*, 2009 WL 499699 (S.D. Tex. Feb. 23, 2009), the

- 15 -

court held that the underlying petition indicated that slanderous statements were made in the context of the insured's employment relationship, and therefore that the statements were the kind of acts to which the court must apply the business pursuits exclusion. *Id.* at *7. The court noted that the purpose of the business pursuits exclusion is to lower premiums for homeowners insurance by removing coverage for activities not typically associated with the operation and maintenance of a home. *Id.* The court held that the insured was not entitled to a defense under the policy because "[c]learly, alleged misconduct carried out in the context of a homeowner's workplace relationship bears no relation to the operation and maintenance of his home." *Id.*

In *Hodges* the plaintiff filed suit against her former pastor and his church, seeking damages arising from inappropriate sexual behavior. *Hodges*, 1996 WL 33650193, at *1. The church's insurer maintained that it had no duty to defend the pastor because coverage was excluded under the policy's business pursuits exclusion. *Id.* The trial court granted summary judgment for the insurer, and the court of appeals affirmed. *Id.* at *1, *3. On appeal, the court noted that the plaintiff's petition alleged facts that clearly arose from the counselor/pastor relationship, and that the relationship was the "primary thrust" of the plaintiff's pleading. *Id.* at *3 ("When the petition is fairly and reasonably examined, the counselor/pastor relationship is clearly the primary thrust of [the plaintiff's] allegations."). The plaintiff's claim was therefore squarely within the business pursuits exclusion of the church's policy. *Id.*

Like the insurers in these cases, Safeco maintains that all of the factual allegations in

- 16 -

*Anderton* that concern Hiles involve and derive from his business pursuits, particularly his role in the development of a luxury residential community and golf course in Tyler, Texas. Safeco summarizes the factual allegations in *Anderton* as follows: Anderton alleges that, in 2002, he and Cawley formed two partnerships with the intention of purchasing a golf course and residential community, and Cawley and Hiles agreed to acquire Anderton's interest in the partnerships for less than its true value, in order to take control of the partnerships and to "squeeze out" Anderton. The partnerships were Bellwood Lake Partnership, Ltd. and Cascade. Safeco maintains that it is not necessary for the *Anderton* pleadings to allege explicitly that his defamation claim arises out of his business relationship with Hiles; instead, Safeco insists that the exclusion applies if a fair reading of the allegations as a whole leads to the conclusion that all of the claims asserted in *Anderton* arise out of Hiles's business pursuits. Hiles argues that the court should resolve any ambiguity in the Policy in his favor, as the insured. He posits that, in the *Anderton* petitions, there are no allegations, facts, or statements that indicate that the alleged defamation arose out of Hiles's business pursuits.

A fair reading of the allegations of the *Anderton* seventh amended petition[7] as a whole

---

[7]The same is true of all other pertinent pleadings. An insurer's duty to defend may arise in an amended petition that is tendered to the insurer. *See, e.g., Rhodes*, 719 F.2d at 119 (noting that "[a] complaint which does not initially state a cause of action under the policy, and so does not create a duty to defend, may be amended so as to give rise to such a duty" and that a complaint may also be amended to terminate a duty to defend created by a prior petition). Each petition in *Anderton* asserts a defamation claim against Hiles, and a fair reading of each petition leads to the conclusion that the alleged facts relate to Hiles's business ventures. Thus no petition in *Anderton* created a duty to defend Hiles against a defamation claim.

leads to the conclusion that all of the alleged facts—not merely those pertinent to the defamation claim, but all of the allegations against Hiles—relate to business ventures involving Anderton, Hiles, and Cawley, and business entities owned or controlled by them. The alleged facts are not ambiguous, as Hiles asserts.  No facts alleged relate to any personal or non-business activities of Hiles, and the court is not permitted to imagine factual scenarios that would not fall within the business pursuits exclusion that are not alleged in the petition.[8] Although the defamation claim itself does not specify whether it is based on business or personal, non-business activities of Hiles, the claim expressly incorporates the "Statement of Facts" set forth earlier in the petition.  P. App. 235.  *All* of the facts alleged in the Statement of Facts relate to the business relationship and dealings among the individuals involved.

Hiles is mentioned four times:

- "[O]ver the course of the six months following the placement of the loan, Cawley, Meier and Hiles began implementing their conspiracy to oust Anderton from the development and coerced Anderton to allow Cawley to manage Cascade." *Id.* at 220.

- "Despite Anderton's decade of hard work and commitment to the best interests of development, The Bill Cawley Trust, the Christopher Cawley Trust, the Kelley Cawley Trust, Scott Olson, Jim Meier, and Marcus Hiles took tortious actions including, but not limited to, influencing and providing substantial assistance or encouragement to Cawley-Cascade GP and Cawley to attempt to wrongfully exercise the Buy-Sell." *Id.* at 221-22.

---

[8]In his reply brief, Hiles urges the court to imagine facts not alleged in the petition that are outside the scope of the business pursuits exclusion.  *See* D. Reply 6.  This is precluded under Texas law.

- "The Bill Cawley Trust, the Christopher Cawley Trust, the Kelley Cawley Trust, took additional tortious actions including, but not limited to, influencing and providing substantial assistance or encouragement to Cawley-Cascade GP and Cawley to attempt to wrongfully take control of Cascade from Anderton and 'squeeze out' Anderton.  Scott Olson, Jim Meier, and Marcus Hiles are believed to also have been active participants in this wrongful conduct."  *Id.* at 222.

- "Anderton and Anderton Development Partnership have requested that Cascade Properties, Ltd. indemnify them from any and all claims, causes of action and damages asserted against them in this lawsuit by Cawley, the Cawley Parties, Hiles, and the Hiles Intervention Parties."  *Id.* at 225.

These paragraphs appear to be the only ones that mention Hiles.  All of these allegations fall squarely within the business pursuits exclusion: they assert that Hiles assisted or encouraged other individuals and entities to end business relationships and deals with Anderton.  Fairly read, there is nothing in these allegations that even suggests that Hiles committed any tort or did any act unconnected to his business pursuits.

Moreover, in the third, fourth, fifth, and sixth amended petitions in *Anderton*, the allegations specific to the defamation claim are similar to the ones in the seventh amended petition.  And in the third amended petition, Anderton alleged that, "[o]n or about February 25, 2008, Hiles sent to Cawley, via facsimile, a document entitled 'Concerns regarding Cascades.'  The document contained multiple false and defamatory statements about Anderton."  *Id.* at 3 (3d Am. Pet. ¶ 13).[9]

---

[9]In his response to Safeco's summary judgment motion, Hiles moves to strike the letter titled "Concerns about Cascades" from Safeco's summary judgment evidence and to strike the corresponding description of the letter in Safeco's brief.  Because the court is not relying on the letter to determine the nature of the allegations made against Hiles, it overrules the objections as moot.

Safeco has not only defeated Hiles's breach of contract claim, it has demonstrated that it is entitled to summary judgment on its declaratory judgment action because it established beyond peradventure that the defamation claim against Hiles in *Anderton* is excluded from coverage by a policy exclusion.  Read fairly, the relevant pleadings, including the seventh amended petition, allege no facts that suggest that any non-business activities of Hiles serve as the basis for the *Anderton* plaintiff's claims.  For the business pursuits exception to apply, it is not necessary that a pleading contain a specific reference to business pursuits or to profit. *See, e.g., Hallman*, 159 S.W.3d at 644-45 (inferring from nature of activity alleged in petition that defendant acted with profit motive, and applying business pursuits exclusion).  As in *Hodges*, the primary thrust of the *Anderton* petition is the business relationships among Hiles, Anderton, and Cawley, and the business entities and deals among them.

For the same reasons, the court holds that Hiles has not established beyond peradventure that the defamation claim in *Anderton* is covered under the Policy.  The court therefore denies summary judgment for Hiles in this respect.[10]

### D

The court next addresses Hiles's argument that, even if Safeco does not owe him a duty to defend or indemnify in connection with the defamation claim in *Anderton*, Safeco is

---

[10]Hiles also alleges in his answer that Safeco has a duty to indemnify him with respect to the defamation claim in *Anderton*.  Because Safeco has no duty to defend, it follows that it has no duty to indemnify.  *See, e.g., Archon Invs., Inc. v. Great Am. Lloyds Ins. Co.*, 174 S.W.3d 334, 339 (Tex. App. 2005, pet. denied) ("The duty to defend is thus broader than the duty to indemnify; if an insurer has no duty to defend, it has no duty to indemnify[.]").

estopped from denying its duty to defend because it provided him a defense in the consolidated case.[11]

Hiles maintains that because Safeco previously agreed to defend him and to pay for his choice of counsel, and has not communicated its rejection of his defense, Safeco is obligated to pay his defense costs in the consolidated case from the date it received notice and tender of *Anderton* to a future date when Safeco officially notifies him in writing of its change of position (i.e., that Safeco will not defend him). Hiles contends that, by Safeco's September 30, 2009, November 25, 2009, and February 17, 2010 letters, it accepted his defense and agreed to pay all defense fees incurred in defending him.

Safeco characterizes Hiles's position as a waiver or estoppel argument, i.e., that Safeco waived its right to deny a duty to defend Hiles or is estopped from denying such duty. Safeco contends that, under Texas law, waiver and estoppel cannot be used to create insurance coverage where none exists. It argues that Hiles has not and cannot contend that he was prejudiced by Safeco's conduct because he defended himself in *Anderton* for 15 months before he tendered his defense to Safeco, and thus he could not have acted in reliance on Safeco's defense.

"Under some circumstances, insurers who take control of their insured's defense

---

[11]Waiver and estoppel are not available grounds on which it can be found that Safeco breached the Policy. Instead, they are alternative grounds for concluding that Safeco owed a duty to Hiles *in the absence* of breach of contract. In other words, if Safeco did not owe Hiles a duty to defend under the contract, it might still owe a duty under principles of waiver or estoppel.

without a valid reservation of rights or non-waiver agreement can and should be prevented from denying benefits that would have been payable had the claim been covered because the insured is actually prejudiced by the insurer's actions." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 785 (Tex. 2008).  Although an insurance policy is not *expanded and rewritten* to include additional coverage if the insurer defends the insured where no coverage exists, "if the insurer's actions *prejudice the insured*, the lack of coverage does not preclude the insured from asserting an estoppel theory to recover for any damages it sustains because of the insurer's actions." *Id.* at 787 (emphasis added).

Safeco has pointed to the absence of evidence that it did not validly reserve its right to deny its duty to defend Hiles, and Hiles has not adduced any proof that would enable a reasonable jury to find in Hiles's favor in this respect.[12]  Safeco reiterated its reservation of rights in the three letters on which Hiles relies.  *See, e.g.,* D. App. 114 ("We will continue to investigate this claim under a full reservation of all of our rights under the policy.  Please note that any action taken by SAFECO or its representative does not constitute an admission of coverage and shall not waive any of our rights under this policy."); *id.* at 117 ("We will defend the allegation of defamation under a full reservation of all of our rights under this policy.  Any action taken by SAFECO or its representative does not constitute an admission of coverage and shall not waive any of our rights under this policy."); *id.* at 120 ("Neither this letter, nor Safeco's ongoing investigation in relation to coverage for the claims at issue

---

[12]Accordingly, it follows that Hiles has not established beyond peradventure that Safeco *did not* reserve its right to deny its duty to defend him.

- 22 -

in the above lawsuit shall be construed as a waiver of any previously issued reservation of rights letter, or of any provisions of the Safeco Policy.  Safeco's prior reservation of rights letters are incorporated herein for all purposes.").  And Hiles does not argue that Safeco did not validly reserve its right to deny its duty to defend him in *Anderton*.[13]

Additionally, Safeco has pointed to the absence of evidence that Hiles was prejudiced by Safeco's defense in the consolidated case, and Hiles has not adduced evidence that would enable a reasonable jury to find such prejudice.[14]

The court therefore holds that Safeco had no duty to defend or indemnify Hiles in the consolidated cases, and it grants Safeco's summary judgment in this respect.  Because it follows that Hiles has not established beyond peradventure that Safeco had a duty to defend

---

[13]Hiles argues instead that Safeco is obligated to pay defense fees for his independent counsel because Safeco issued a reservation of rights, a conflict of interest existed, and the coverage facts overlap with the liability facts in the underlying litigation.  But the cases on which Hiles relies address whether, and in what circumstances, an insurer is obligated to pay for independent counsel for its insured where the *insurer owes its insured a duty to defend*.  *See, e.g., N. Cnty. Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685, 690 (Tex. 2004) (holding that "having rejected the insurer's defense *without a sufficient conflict*, [the insured] lost his right to recover the costs of that defense." (emphasis added)); *Rhodes*, 719 F.2d at 120 ("The insurer offered to defend, but only with a reservation of rights . . . .  When a reservation of rights is made, however, the insured may properly refuse the tender of defense and pursue his own defense.  The insurer remains liable for attorneys' fees incurred by the insured[.]"); *Hous. Auth. of City of Dall. v. Northland Ins. Co.*, 333 F.Supp.2d 595, 600 (N.D. Tex. 2004) (Lindsay, J.) (describing the relevant issue as "[the insured] further contends that [the insurer's] tender of a defense subject to a reservation of rights letter triggered its right to select its own counsel.").  These cases do not hold that an insurer owes a duty to defend its insured merely because it issues a reservation of rights and a conflict exists.  Hiles's argument is therefore misplaced.

[14]It follows that Hiles likewise has failed to establish beyond peradventure that he was prejudiced by Safeco's defense in the consolidated case.

or indemnify him in the consolidated cases, his motion for summary judgment is denied in this respect.

IV

Safeco moves for summary judgment on its declaratory judgment action, in which it requests a judgment declaring that it has no duty to defend or indemnify Hiles[15] in connection with claims other than the defamation claim in *Anderton.*

A

Safeco argues that it is entitled to a declaratory judgment that it owes no duty to defend or indemnify Hiles in the consolidated lawsuit or the additional lawsuits because: (1) none of the claims against Hiles, other than the defamation claim, arises out of an "occurrence"; (2) none of the claims against Hiles, other than the defamation claim, seeks damages because of "bodily injury" or "property damage"; (3) all of the claims against Hiles in *Anderton* are excluded from coverage by the "business pursuits" exclusion; (4) Hiles paid nothing to settle *Anderton*; (5) there are no claims against an insured in *Cascade*; and (6) Hiles did not tender the additional lawsuits to Safeco.

Because the court has already addressed Safeco's duty to defend in the context of the

---

[15]It is unclear whether Hiles asserts that Safeco has a duty to defend him or the Hiles Entities in *Cascade* or in the additional lawsuits.  In his answer, Hiles appears to assert that Safeco at least owes him a duty to defend against *Western Rim Investors 2006-3.  See* Answer 9 ¶¶ 1-3, 7 (defining "Litigation" as the consolidated case and *Western Rim Investors 2006-3*).  Hiles does not mention *Western Rim Investors 2006-3* in his motion for summary judgment.  For completeness, the court will address Safeco's duty to defend or indemnify Hiles and the Hiles Entities in *Anderton, Cascade,* and the additional lawsuits.

defamation claim in *Anderton*, the court will address Safeco's duty to defend in three other contexts: (1) the non-defamation claims against Hiles in *Anderton*; (2) the claims against the Hiles Entities in *Cascade*; and (3) the claims against Hiles and/or the Hiles Entities in the additional lawsuits.

B

The court first considers whether Safeco owes Hiles a duty to defend or indemnify Hiles in connection with the non-defamation claims asserted against him in *Anderton*.

Safeco argues that the non-defamation claims—tortious interference with existing contracts, aiding and abetting breach of fiduciary duty, and conspiracy[16]—do not seek damages because of "bodily injury" or "property damage."  The Policy provides that Safeco will provide a defense and pay up to the limit of liability for damages for which the insured is liable "[i]f a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* or *property damage*[.]"  P. App. 66.  Hiles does not allege that the non-defamation claims sought damages for property damage.  He does not respond to Safeco's motion for summary judgment as to the non-defamation claims in *Anderton*, except to allege that he is owed a defense by Safeco against the entirety of the consolidated case because the defamation claim in *Anderton* is covered by the Policy.

"Bodily injury" is defined as "bodily harm, sickness or disease, including required

---

[16]As the court notes above, the seventh amended petition asserts only a defamation claim and an aiding and abetting breach of fiduciary duty claim against Hiles.  But earlier petitions in *Anderton* asserted claims against Hiles for conspiracy and tortious interference with existing contracts.

care, loss of services and death resulting therefrom[]" and "personal injury: arising out of one or more of the following offenses: (a) false arrest, detention or imprisonment, or malicious prosecution; (b) libel, slander or defamation of character; or (c) invasion of privacy, wrongful eviction or wrongful entry." *Id.* at 87. Construing the unambiguous terms of the Policy, and applying to those terms the summary judgment facts that a reasonable jury could find, the court holds a reasonable jury could not find that Hiles suffered "bodily injury" as a result of the conduct that is alleged to have constituted tortious interference with an existing contract, aiding and abetting breach of fiduciary duty, or conspiracy.

Moreover, there are no allegations in the *Anderton* petitions that give rise to bodily injury. The court applies the eight corners rule, comparing the allegations in the *Anderton* petitions with the coverage afforded by the Policy, and giving the allegations in the petitions a liberal interpretation. The court concludes from the face of the pleadings and without reference to facts outside of the pleadings that the non-defamation claims in the *Anderton* pleadings do not allege damages because of bodily injury, as required for coverage.

The court thus holds that Safeco has established as a matter of law that it has no duty to defend or indemnify Hiles in connection with the non-defamation claims in *Anderton*.[17]

---

[17]Because the court agrees with Safeco that the non-defamation claims in *Anderton* are not claims for bodily injury, the court declines to address Safeco's arguments that the non-defamation claims do not arise out of an "occurrence," or that Hiles paid nothing to settle *Anderton*.

The court also holds that Safeco has no duty to defend or indemnify Hiles against the claims other than the defamation claim, because these claims are excluded from coverage by the business pursuits exclusion for the same reasons that the defamation claim is excluded from coverage. *See supra* § III(C).

Because of the court's holding *supra* in § III(C) that Safeco has established as a matter of law that it has no duty to defend or indemnify Hiles in connection with the defamation claims in *Anderton*, Safeco is entitled to summary judgment declaring that it has no duty to defend or indemnify Hiles in *Anderton*.

C

The court considers second whether Safeco has a duty to defend or indemnify in connection with the claims against Hiles's businesses in *Cascade*.

Hiles appears to allege in his answer that Safeco is obligated to defend and indemnify the Hiles Entities in *Cascade* and/or in the consolidated case, either because the Hiles Entities are covered as insureds under the Policy or because Safeco is obligated to defend Hiles in *Anderton*. Safeco argues that there is no claim against an insured in *Cascade* and that it therefore has no duty to defend or indemnify any defendant in *Cascade*.

The only defendants in *Cascade* are Western Rim Investors 2006-4, L.P., Western Rim Investors 2007-1, L.P., Cascades of Tyler Joint Venture, LLP, and Cascades of Tyler Homes Joint Venture, LLP. *See* P. App. 18. Hiles is not a defendant in *Cascade*. Safeco has a duty to indemnify and defend "any *insured* for damages." *Id.* at 66. And under the Policy, an insured means "you," "the following residents of your household," a person legally responsible for animals or watercraft belonging to the insured, and a person operating a vehicle at the insured's location or while engaged in employment of the insured. *Id.* at 77. "You" refers to the "named insured" as shown in the declarations of the Policy, *see id.* at 76, and the declarations reflect that Hiles is the only "named insured ," *see id.* at 49. Because

- 27 -

Safeco only has a duty to indemnify and defend an "insured," and because Safeco has established that the Hiles Entities are not "insureds" under the Policy, Safeco has established as a matter of law that no defendant in *Cascade* is an insured under the Policy. The court therefore holds that Safeco is entitled to summary judgment declaring that Safeco owes no duty to defend or indemnify any defendant in *Cascade*.

## D

The court determines third whether Safeco has a duty to defend or indemnify any party in the additional lawsuits.

Safeco maintains that Hiles never tendered the additional lawsuits and that he never requested defense or indemnification in those lawsuits. Safeco avers that it first became aware of the additional lawsuits from Hiles's answer in the present case. It argues that an insurer's duty to defend is only triggered by actual service of process on the insured and relay to the insurer, and that it therefore has no duty to defend or indemnify Hiles in the additional lawsuits. Hiles has not responded to Safeco's arguments.

Under the Policy, Hiles was required after an occurrence to (1) give written notice to Safeco or its agent as soon as practicable, (2) promptly forward to Safeco every notice, demand, summons, or other process relating to the occurrence, and (3) at Safeco's request, help it to enforce any right of contribution or indemnity, help it conduct the suit and attend hearings and trials, and help it to secure and give evidence and obtain witnesses. P. App. 72. These duties were enumerated under the heading, "Your Duties After Loss." *Id.*

An insurer has no duty to defend the insured until it receives notice of the suit. *See,*

*e.g., Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173-74 (Tex. 1995). "One of the purposes of a notice of suit provision in an insurance policy is to notify the insurer that the insured has been served with process and that the insurer is expected to defend the suit." *Id.* at 173 (citing *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 369 (Tex. 1978)). And the insured's compliance with the notice provisions of the policy is a "'condition precedent to the insurer's liability on the policy.'" *Id.* at 173-74 (quoting *Weaver*, 570 S.W.2d at 369).

Safeco has pointed to the absence of evidence that Hiles tendered the additional lawsuits. Because Hiles has not adduced evidence that would enable a reasonable jury to find that he made the required tender, Safeco is entitled to summary judgment declaring that it has no duty to defend or indemnify Hiles or the Hiles Entities in the additional lawsuits.

E

Because Safeco owes no duty to defend or indemnify Hiles or the Hiles Entities in *Anderton*, *Cascade*, the consolidated case, or the additional lawsuits, Safeco is entitled to summary judgment dismissing Hiles's counterclaim for breach of contract. Hiles's motion for summary judgment on his breach of contract counterclaim is denied.

V

Safeco also moves for summary judgment dismissing Hiles's remaining counterclaims for (1) unfair settlement claim practices, in violation of Tex. Ins. Code Ann. § 541.000, *et seq.*; (2) bad faith in the handling of claims against Hiles; (3) violations of the DTPA; and (4) failure to timely accept, deny, or pay Hiles's claim, in violation of Tex. Ins. Code

§ 542.051, *et seq.*[18]

## A

Hiles alleges that Safeco committed unfair claim settlement practices, in violation of Tex. Ins. Code Ann. § 541.000, *et seq.* He asserts that Safeco violated § 541.060(a) by (1) misrepresenting to Hiles a material fact or policy provision relating to coverage at issue, in violation of § 541.060(a)(1); (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which Safeco's liability had become reasonably clear, in violation of § 541.060(a)(2)(A); (3) failing to promptly provide to Hiles a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for Safeco's denial of a claim or offer of a compromise settlement of a claim, in violation of § 541.060(a)(3); and (4) refusing to pay a claim without conducting a reasonable investigation with respect to the claim, in violation of § 541.060(a)(7). Hiles also alleges that Safeco made misrepresentations of the Policy, in violation of § 541.061, by (1) making an untrue statement of material fact, in violation of § 541.061(1); (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made, in violation of § 541.061(2); (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact, in violation of § 541.061(3); (4) making a material misstatement of law, in

---

[18]Hiles also asserts counterclaims for declaratory judgment and attorney's fees. The court has addressed Hiles's attorney's fees counterclaim *supra* at note 3, and it addresses Hiles's declaratory judgment counterclaim *infra* at § IV(D).

violation of § 541.061(4); and (5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of the Texas Insurance Code, in violation of § 541.061(5).

Hiles alleges in his answer that he is entitled to a defense in the consolidated case and the additional lawsuits, and that once his liability in those lawsuits became reasonably clear, Safeco should have made reasonable offers of settlement within policy limits. He avers that, despite his written demand that Safeco defend and indemnify him, Safeco failed and refused to do so, as legally required. Hiles also avers that Safeco violated the DTPA because it did not defend him when it knew or should have known that it had a duty to do so, and because it refused to indemnify him when Cawley made a reasonable demand within the limits of the Policy. Hiles argues that Safeco violated the DTPA by (1) representing that goods or services have characteristics, ingredients, or benefits that they do not have, in violation of Tex. Bus. & Com. Code Ann. § 17.46(b)(5); (2) representing that goods or services are of a particular standard or quality when they are not, in violation of § 17.46(b)(7); (3) representing that an agreement confers rights, remedies, or obligations that it does not have or involve, in violation of § 17.46(b)(12); and (4) engaging in unconscionable conduct, actions, and courses of actions, in violation of § 17.50(a)(3).[19]

Safeco contends that because it did not breach the Policy, Hiles's claims for Texas Insurance Code violations must fail as well. It posits that because it demonstrated that it had

---

[19]Hiles also asserts that Safeco violated Tex. Ins. Code Ann. § 541.151 by its DTPA violations.

no obligation to defend or indemnify Hiles, it cannot as a matter of law be liable for any statutory violations.  Hiles has not responded to Safeco's motion for summary judgment to the extent it is addressed to Hiles's statutory counterclaims.

Assuming *arguendo* that Safeco could be liable for a statutory violation in the absence of coverage, Hiles has not adduced evidence that would enable a reasonable jury to find in his favor on any of these grounds for statutory relief.  Instead, Hiles only argues that Safeco did not defend and indemnify him, and he lists the various statutory provisions allegedly violated.  The court therefore grants summary judgment for Safeco on Hiles's statutory counterclaims.

## B

Hiles avers that Safeco's conduct in connection with the handling of the claims against him "ha[s] fallen below the legal duties and obligations imposed on [Safeco]" and amounts to bad faith.  Safeco responds that Texas does not recognize a tort duty with respect to an insurer's handling of third-party claims other than the *Stowers*[20] duty.

"'As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered.'"  *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 2009 WL 3074618, at *27 (N.D. Tex. Mar. 30, 2009) (Fitzwater, C.J.) (quoting *Republic Ins.*

---

[20]*G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. 1929).  "An insurer's *Stowers* duty is its duty 'to exercise ordinary care in the settlement of claims to protect its insureds against judgments in excess of policy limits.'"  *RLI Ins. Co. v. Phila. Indem. Ins. Co.*, 421 F.Supp.2d 956, 968-69 n.10 (N.D. Tex. 2006) (Fitzwater, J.) (quoting *Am. Phys. Ins. Exch. v. Garcia*, 876 S.W.2d 842, 843 n.2 (Tex. 1994)).

*Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)).  And while an insurer owes its insured a duty of good faith and fair dealing in the processing of the insured's *own claim of loss*, "an insurer owes the insured no duty of good faith and fair dealing" when handling a third-party claim.  *See Mid-Continent Cas. Co. v. Eland Energy, Inc.*, ___ F.Supp.2d ___, 2011 WL 2417158, at *9 (N. D. Tex. June 14) (Fitzwater, C.J.), *appeal docketed*, No. 11-10649 (5th Cir. July 8, 2011); *see also Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co. of Pitt.*, 341 F.3d 415, 425 (5th Cir. 2003) ("An insured, however, has no claim for bad faith premised on the insurer's investigation or defense of a claim brought against it by a third party.").  Instead, an insurer's common law duty in the context of handling third-party claims "is limited to the *Stowers* duty to protect the insured by accepting a reasonable settlement offer within policy limits."  *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex. 2007) (citation omitted).

Hiles has adduced no evidence that would enable a reasonable jury to find that Safeco refused to accept a reasonable settlement offer within policy limits, or that Safeco was even legally obligated to defend Hiles against a third-party claim.  Safeco's obligation in handling any third-party claims against Hiles is limited to the *Stowers* duty and to the obligations under the Policy.  The court therefore grants Safeco summary judgment dismissing Hiles's counterclaim for bad faith handling of third-party claims.

## C

The court turns finally to Hiles's counterclaim for Safeco's failure to promptly affirm, deny, or pay his claims, in violation of Tex. Ins. Code Ann. § 542.051, *et seq.*

Safeco argues that, under Texas law, an insured is not entitled to damages under § 542.051, *et seq.*, when the insurer validly denies the claim.  Safeco maintains that, because it has demonstrated that it has no obligation to defend or indemnify Hiles, Hiles's counterclaim for failure to promptly pay claims fails as a matter of law.

Under § 542.056, an insurer must notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all necessary information to secure final proof of loss.  If the insurer notifies the insured that it will pay all or part of a claim, the insurer must pay the claim no later than the fifth business day after the date notice is given to the insured.  *See* § 542.057.  But pursuant to § 542.060, an insurer is liable to the insured for failure to timely accept, deny, or pay a claim if the insurer "is liable for a claim under an insurance policy" and the insurer is not in compliance with § 542.051, *et seq.*  Thus an insurer must first be liable for a claim to be liable for damages for failure to timely accept, deny, or pay a claim.  *See also Spicewood Summit Office Condos. Ass'n, Inc. v. Am. First Lloyd's Ins. Co.*, 287 S.W.3d 461, 468 n. 4 (Tex. App. 2009, pet. denied) (noting that an insurer is "not liable for a violation of prompt-payment statute unless liable for underlying insurance claim"); *Lundstrom v. United Servs. Auto. Ass'n-CIC*, 192 S.W.3d 78, 98-99 (Tex. App. 2006, pet. denied) (affirming summary judgment for insurer on prompt payment claim where claim was not covered by the insurance policy).

Because the court has held above that Hiles's claims are not covered by the Policy, the court also holds that Safeco cannot be liable for failure to promptly affirm, deny, or pay

- 34 -

Hiles's claims.  The court therefore grants Safeco summary judgment dismissing Hiles's prompt payment counterclaim.

D

The court also grants Safeco summary judgment dismissing Hiles's counterclaim for declaratory judgment.[21]

Federal courts have broad discretion to grant or refuse declaratory judgment.  *See Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991).  "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  And the court may dismiss a declaratory judgment action where the underlying questions "will be resolved in the context of [other] actions. Separate declaratory judgment actions would be redundant."  *Kougl v. Xspedius Mgmt. Co. of Dall./Fort Worth, L.L.C.*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.) (dismissing declaratory judgment claim requesting a declaration that plaintiffs have an enforceable agreement with defendants and that they are entitled to compensation as a result of defendants' breach where such questions will be resolved in the context of a breach of

---

[21]Safeco did not specifically move for summary judgment on Hiles's declaratory judgment counterclaim.  In other instances it would be error for the court to grant this relief. *See, e.g., John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987). Here, however, Hiles's declaratory judgment counterclaim essentially overlies aspects of his breach of contract counterclaim.  Hiles has therefore had a fair opportunity to oppose summary judgment dismissing his declaratory judgment counterclaim because he has been able to address the grounds on which Safeco relied to obtain summary judgment dismissing his breach of contract counterclaim.

- 35 -

contract claim).

Hiles seeks a judgment declaring that (1) Safeco has a duty to pay Hiles's reasonable defense costs, (2) Safeco breached its duty, (3) Hiles was damaged by virtue of the breach, (4) Hiles's damages were proximately caused by Safeco's breach, (5) the Policy provides Hiles coverage in connection with the consolidated case and the additional lawsuits, and (6) Hiles's rights and damages incurred vis-a-vis the Policy. The court has resolved the underlying questions presented in this counterclaim with its dismissal of Hiles's breach of contract counterclaim. The court therefore grants Safeco summary judgment dismissing Hiles's counterclaim for declaratory judgment.[22]

\* \* \*

Safeco's March 30, 2011 motion for summary judgment is granted. Hiles's April 22, 2011 motion for partial summary judgment is denied. The court today enters judgment in favor of Safeo declaring that Safeco has no duty to defend or indemnify Hiles or the Hiles

---

[22]Because the court is dismissing all of Hiles's counterclaims, the court holds that Safeco's April 5, 2011 motion for a protective order, or, alternatively, to temporarily stay discovery is moot. Likewise, because Hiles seeks to introduce evidence that, if allowed, would not alter the court's decision, Hiles's June 6, 2011 motion for leave to file supplemental appendix is denied as moot.

Entities in connection with *Cascade*, *Anderton*, the consolidated case, or the additional lawsuits, and dismissing Hiles's counterclaims with prejudice.

**SO ORDERED.**

August 9, 2011.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE